IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| JERRY O RHYMES<br>REBA E. RHYMES | CASE NO. 0553572ERG |
| JERRY O. RHYMES AND<br>REBA E. RHYMES | |
| VS. | ADVERSARY NO. 055180EE |
| COUNTRYWIDE HOME LOANS, INC. | |

| | |
|---|---|
| Hon. Robert Gambrell<br>P. O. Box 8299<br>Biloxi, MS  39535 | Attorney for Debtors |
| Hon. C. Phillip Buffington<br>1080 River Oaks Dr. Suite A-250<br>Jackson, MS 39232 | Attorney for Countrywide |

Edward Ellington, Judge

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON THE *COMPLAINT TO SET ASIDE DEED OF TRUST
AND AVOID LIEN OF COUNTRYWIDE HOME LOANS, INC.***

**THIS MATTER** came before the Court for hearing on the *Complaint to Set Aside Deed of

Trust and Avoid Lien of Countrywide Home Loans, Inc.* filed by Jerry O. Rhymes and Reba E.

Rhymes, and the *Answer and Defenses* filed by Countrywide Home Loans, Inc. After considering the testimony, the pleadings, the oral arguments and the briefs of the parties, the Court finds that the complaint is well taken in part and should be granted in part.

## FINDINGS OF FACT

Jerry O. Rhymes and Reba E. Rhymes (Debtors) filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on August 10, 2005. On December 12, 2005, the Debtors filed the above styled adversary proceeding against Countrywide Home Loans, Inc. (Countrywide) in which the Debtors are seeking to have the Deed of Trust given by Jerry O. Rhymes to Countrywide declared void since the property is homestead and his wife, Reba E. Rhymes, did not sign the Deed of Trust. Countrywide acknowledges that Jerry O. Rhymes did execute a Promissory Note and Deed of Trust in favor of Countrywide, but denies that the Deed of Trust should be declared void.

In their Chapter 13 plan, the Debtors do not propose to pay Countrywide anything. On January 19, 2006, an *Order* was entered on Countrywide's objection to confirmation of the Debtors' Chapter 13 plan. The order states that upon the resolution of the adversary proceeding, the Debtors' Chapter 13 plan would be modified accordingly, if needed. On February 22, 2006, an order was entered confirming the Debtors' Chapter 13 plan.

At the trial on the above styled adversary proceeding, the parties submitted the following *Stipulation of Facts*:

1. Jerry Rhymes and Reba Rhymes were married on August 10, 2004.

2. On October 26, 2004, Jerry Rhymes and Reba Rhymes entered into a contract with Azalea Homes for the purchase of a 1998 Horton mobile home.

3. The 1998 Horton mobile home was delivered to 130 Ben Rogers Road in Lucedale, Mississippi on or about February 17, 2005, and Jerry Rhymes and Reba Rhymes moved into the mobile home soon thereafter.

4. On February 5, 2005, Jerry Rhymes executed a Bill of Sale conveying the 1984 Conner mobile home to Azalea Homes for five thousand five hundred dollars ($5,500.00). Azalea Homes removed the 1984 Conner mobile home from 130 Ben Rogers Road after February 17, 2005.

5. On March 16, 2005, Plaintiff, Jerry Rhymes, signed his loan application with Defendant, Countrywide Home Loans, Inc.

6. Countrywide Home Loans extended a loan to Jerry Rhymes in the amount of Eighty-One Thousand Two Hundred Twenty-Five Dollars ($81,225.00) to purchase the 1998 Horton mobile home and payoff existing deeds of trust. The closing occurred and the loan documents were executed on March 16, 2005, with Heritage Title LLC serving as the closing agent. Jerry Rhymes and Reba Rhymes were occupying the property located at 130 Ben Rogers Road as their home prior to the date of the loan closing.

7. A deed of trust was executed to secure repayment of the note on March 16, 2005. The deed of trust was filed March 28, 2005, and re-filed on May 31, 2005. The deed of trust was signed only by Jerry Rhymes.

8. At the request of the closing attorney, Reba Rhymes signed a quitclaim deed conveying the property located at 130 Ben Rogers Road to Jerry Rhymes on March 16, 2005. Jerry Rhymes conveyed the property to Jerry Rhymes and Reba Rhymes on March 23, 2005.

9. Jerry Rhymes and Reba Rhymes filed for homestead for purposes of tax exemption pursuant to §27-33-3 *Miss. Code Ann. 1972* in February of 2006, for the property located at 130 Ben

Rogers Road.

10. The purchase price of the mobile home was Sixty-Six Thousand Seven Hundred Sixty-Six Dollars and Thirty-Five Cents ($66,766.35).

11. As part of the transaction, Countrywide also paid off two previous debts secured by the property located at 130 Ben Rogers Road, Lucedale.

*Stipulation of Facts,* pp. 1-2, September 13, 2007.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II.

#### A.

The issue before the Court is whether the Deed of Trust signed by Mr. Rhymes in favor of Countrywide is void due to the failure of Mrs. Rhymes to sign the Deed of Trust.

Mississippi Code Section 89-1-29 pertains to a spouse's role in conveying a homestead. It states in pertinent part:

> § 89-1-29. Spouse's role in conveying homestead; incompetent spouse.
>
> A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse. . . .

Miss. Code § 89-1-29 (1980).

In *Grantham v. Ralle,* the Supreme Court of Mississippi explained the reasoning behind this

prohibition:

> It is to be noted that these homestead provision first were listed in the Code of 1880 primarily as a protection for the wife in lieu of dower which had been abolished by statute. The basic purpose was, of course, to prevent her husband from conveying or encumbering the homestead without the consent of his wife, and the effect was to avoid any attempt to so convey the homestead.

*Grantham v. Ralle,* 158 So. 2d 719, 724 (Miss. 1963).

"The cases are legion construing (§ 89-1-29) to mean that a conveyance of homestead without a spouse joining in the execution of the deed is absolutely void." *Welborn v. Lowe,* 504 So. 2d 205, 207 (Miss. 1987). "While Section 89-1-29, . . ., does not give the wife any property right or ownership, it does give her at least a veto power. *Scott v. Scott,* 73 Miss. 575, 19 So. 589 (1986); and *Duncan v. Moore,* 67 Miss. 136, 7 So. 221 (1890)." *Ward v. Ward,* 517 So. 2d 571, 572 (Miss. 1987). Therefore, if the property in question was the homestead of the Debtors, and the Debtors were married and living together, then in order for the Countrywide deed of trust to be valid, both Debtors must have signed the deed of trust.

"In Mississippi, to claim homestead exemption, one must be 'a Mississippi resident and a householder who occupied the land and house in question as a residence.' *In re Franzke,* 634 So. 2d 117, 120 (Miss. 1994)." *Davis v. Smith,* 922 So. 2d 814, 819 (Miss. App. 2005). See Miss. Code § 85-3-23 (1991). At the trial, the *Plaintiffs' Answer to Defendant's First Set of Interrogatories* was admitted into evidence. In their response to *Interrogatory No. 1(d)*, the Debtors state that they currently resided at 130 Ben Rogers Road, Lucedale, Mississippi (Lucedale Property). *Plaintiffs' Answer to Defendant's First Set of Interrogatories*, ¶ 1(d), p. II, Sept. 21, 2006. As stipulated by the parties, the Debtors also stated that the Horton mobile home was delivered on or about February 27, 2005. At that point, the Debtors stated that the wheels were removed and the home affixed to the

5

real property, and from that point in time, the Debtors have resided as husband and wife in the mobile home. *Id.* at IV. Therefore, the Court finds that the Debtors have shown that they are entitled to a homestead exemption in the Lucedale Property.

The parties stipulated that the Debtors were married on August 10, 2004. In their answers to Countrywide's interrogatories, the Debtors stated that they were married at the time the deed of trust was signed and are married at the present date. At the trial, Countrywide did not produce any evidence to contradict this statement. Therefore, the Court finds that the Debtors have shown that the Lucedale Property was their homestead and that they were married and residing on the Lucedale Property at the time Mr. Rhymes signed the Deed of Trust. Consequently, the Court finds that the Deed of Trust signed by Mr. Rhymes in favor of Countrywide is void because " the statute mandates that any conveyance of that homestead without the joinder of both spouses is invalid. (The Supreme Court of Mississippi has) consistently held that such a conveyance is null and void 'as to both the husband and wife.'" *Ward,* 517 So. 2d at 572 (citations omitted). *See also, Alexander v. Daniel,* 904 So. 2d 172 (Miss. 2005); *Goodwin v. McMurphy,* 435 So. 2d 639 (Miss. 1983); *Stockett v. Stockett,* 337 So. 2d 1237 (Miss. 1976); *Gilmer v. Freeman,* 336 So. 2d 717 (Miss. 1976); *Hendry v. Hendry,* 300 So. 2d 147 (Miss. 1974).

The Court will note that the fact that Mrs. Rhymes conveyed the property to Mr. Rhymes on the same date that Mr. Rhymes signed the Deed of Trust does not affect this Court's finding that Countrywide's Deed of Trust is void. As the Supreme Court of Mississippi stated in *Ward v. Ward*, "(o)bviously a wife may convey any interest or right she has in the homestead to her husband, however the statutory mandate still applies to any conveyance by the husband to a third party." *Ward,* 517 So. 2d at 573.

**B.**

Countrywide asserts that Miss. Code § 89-3-23 does not apply to the situation at bar because the Deed of Trust was issued to secure a purchase money lien on the mobile home and the real property. To support this contention, Countrywide sites *Jarvis v. Armstrong,* 94 Miss. 145, 48 So. 1 (Miss. 1909) and *Stuart v. Kennedy & Co.,* 145 Miss. 728, 110 So. 847 (Miss 1927).

In *Jarvis*, the Supreme Court of Mississippi held that when the money advanced "creates and brings into existence the very thing that becomes the homestead. . . .Until such claims are satisfied, homestead rights cannot attach as against them."[1] However, *Jarvis* can be distinguished from the case at bar. In the case at bar, the Debtors already owned the real property and were residing on it at the time Mr. Rhymes signed the Deed of Trust, and therefore, the Debtors' homestead rights in the property were pre-existing. In *Jarvis,* Mr. Armstrong purchased property which Mr. Jarvis financed for him. Mr. Armstrong then built a home on the property. Therefore, unlike the case at bar, Mr. Armstrong did not have any homestead rights in the property until the property was purchased.

Likewise, *Stewart* can be distinguished from the case at bar. In *Stewart* a prior chancery court order had adjudicated that the husband had no equitable title to the property. Therefore, the Supreme Court of Mississippi denied the Stewarts' claim of a homestead exemption finding that "before a homestead claim can arise, there must be some kind of ownership of the land in either the husband or the wife, in order that the claim of occupancy thereof may impress it with the character of a homestead." *Stewart v. Kennedy & Co.,* 110 So. 847, 850 (Miss. 1927).

In the case at bar, it is undisputed that the Rhymeses owned the Lucedale Property and had

---

[1] *Jarvis,* 48 So. at 2.

been occupying the property for some time prior to the time Mr. Rhymes signed the Deed of Trust, and therefore, the Lucedale Property had been "impress(ed) with the character of a homestead" *Id.* before Mr. Rhymes signed the Deed of Trust in favor of Countrywide. Therefore, the Court finds that Countrywide's assertion that the Deed of Trust is valid because it was issued to secure a purchase money lien is not well taken.

## C.

Countrywide's final contention is that since Countrywide paid off two existing debts of the Debtors that were secured by the Lucedale Property, then Countrywide should, therefore, be equitably subrogated to the rights of the two previous creditors in the amount of $12,369.79. In *First National Bank of Jackson v. Huff,* 441 So. 2d 1317 (Miss. 1983), the Supreme Court of Mississippi addressed the issue of subrogation and stated:

> Subrogation has been defined as the 'substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. Words and Phrases Vol. 7, p. 6722.' *Trust Co. v. Peters,* 72 Miss. 1058, 18 So. 497, 30 L.R.A. 829.
>
> The equitable doctrine of subrogation applies whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another, or where one finds it necessary for his own protection to pay the debt for which another is liable. *Prestridge v. Lazar,* 132 Miss. 168, 95 So. 837 (1923).
>
> However, subrogation cannot be invoked by one who has been required to pay the debt of another when the requirement was caused by his own wrongful conduct *and* when to require the debtor to pay under the peculiar circumstances of the case, would be unjust to the debtor. *Lyon et. al. v. Colonial United States Mortgage Co.,* 129 Miss. 54, 91 So. 708 (1922). The conduct described in the *Lyon* case, supra, suggests wrongful conduct as precluding equitable relief.
>
> The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principals.

8

*First National Bank,* 441 So. 2d at 1319.

In the case of *Federal Land Bank of New Orleans v. Miles,* 152 So. 472 (Miss. 1934) T. L. Miles applied for a loan from the Federal Land Bank of New Orleans (Land Bank) in the amount of $800 which was to be secured by two hundred acres of farm land on which he, his wife and two children lived. At the time the loan was closed, the Land Bank paid off a deed of trust to Stone County, Mississippi, in the amount of $320. After Miles defaulted, the Land Bank foreclosed on its deed of trust. It was then discovered that the Land Bank's deed of trust had omitted twenty acres on which the residence and surrounding buildings were located. The Land Bank then sought to have its deed of trust reformed to include the omitted twenty acres of homestead property. The Supreme Court of Mississippi held that, under the circumstances, the Land Bank's deed of trust could not be reformed because "(i)n order for a deed of trust, or deed, to be valid as to a homestead, it must be signed by the wife as well as the husband. Consequently, the deed of trust given to the Federal Land Bank of New Orleans could not be reformed so as to embrace the 20 acres containing the homestead, . . . ." *Federal Land Bank*, 152 So. at 473. However, the court went on to hold that

> (t)he Federal Land Bank was entitled to be subrogated to the rights of Stone county under its deed of trust to the amount that the Federal Land Bank paid Stone county out of the money loaned to T. L. Miles, in discharging Stone county's deed of trust. It was absolutely necessary that this deed of trust be discharged for the Federal Land Bank to get a first mortgage, and we do not think that this right of the Federal Land Bank is barred either by laches or limitation.

*Id.* at 474. In addition, the Supreme Court of Mississippi held that the Land Bank was entitled to interest on the amount it had paid to satisfy the lien to which it was subrogated.

In the case at bar, Countrywide paid off two liens on the Lucedale Property in an attempt to secure a first deed of trust on the property. In the case *Russell v. Grisham,* 170 So. 900 (Miss. 1936), a deed of trust contained the wrong legal description of the real property. The creditor asserted that

9

he was entitled to be subrogated to the lien for taxes that he had paid when he received his deed of trust. In granting the request for subrogation, the Supreme Court of Mississippi held that

> (o)ne who on the security of a mortgage advances money, at the instance of the owner of the land mortgaged, to discharge a lien on the land is not a volunteer within the rule denying him the benefit of subrogation; and that the lien to which he seeks to be subrogated was intended to be, and was, paid is immaterial.

*Russell,* 170 So. at 901 (citations omitted).

Applying the above principles, the Court finds that Countrywide was not a mere volunteer and did not engage in any wrongful conduct in paying off the two existing liens on the Lucedale Property in an attempt to secure a first deed of trust and that requiring the Debtors to pay the amount of the liens which were satisfied by Countrywide would not be unjust. Therefore, Countrywide is entitled to be subrogated to the rights of the two lien holders and granted an equitable lien on the property encompassed in the two liens in the amount of $12,369.79, together with interest at the rate of six and one-half percent (6 ½ %) per annum[2] from March 16, 2005, until the lien is satisfied.

## CONCLUSION

Pursuant to Miss. Code § 89-1-29, in order for a deed of trust on homestead property to be valid both the husband and wife must sign the deed of trust. Since Mrs. Rhymes did not sign the Deed of Trust signed by her husband, Jerry Rhymes, in favor of Countrywide, the Deed of Trust is null and void and should be cancelled. However, since Countrywide paid off two existing deeds of trust on the Debtors' Lucedale Property, Countrywide is entitled to be subrogated to the rights of the two creditors whose debts in the amount of $12,369.79 were secured by the Lucedale Property.

---

[2] This is the interest rate in the March 16, 2005, Promissory Note signed by Mr. Rhymes in favor of Countrywide.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure.